IN THE OREGON TAX COURT
MAGISTRATE DIVISION

Clarence A. LYSDALE
and Nancy C. Lysdale,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC-MD 001193E)

Clarence A. Lysdale, Plaintiff (taxpayer), argued the cause *pro se*.

Sonny West, Auditor, Department of Revenue, argued the cause for Defendant (the department).

Decision for Plaintiffs rendered June 25, 2001.

### COYREEN R. WEIDNER, Magistrate.

Plaintiffs appeal Defendant's 1998 Notice of Tax Assessment dated November 1, 2000. Trial in the matter was held March 6, 2001. Clarence A. Lysdale appeared on behalf of Plaintiffs. Sonny West, Auditor, appeared on behalf of Defendant. For ease of reference herein, the parties are referred to as "taxpayers" and "the department."

### STATEMENT OF FACTS

On June 21, 1996, the shareholders of Maritime Dynamics, Inc. (Maritime), entered into a Stock Purchase Agreement (the Agreement) to sell their stock to MDI Acquisition, Inc. (MDI). Taxpayers were shareholders in Maritime at that time. The Agreement provided that MDI would pay as consideration for the stock $6,006,900 plus Additional Purchase Consideration. Of the $6,006,900, MDI agreed to immediately pay $4,006,900 to the shareholders at the time of closing. Of that amount, taxpayers received $1,571,334, representing their 39.2157 percent ownership interest. The balance of $2,000,000, plus $700,000 for the Additional Purchase Consideration, was placed in an escrow account. Pursuant to the Agreement, the escrow account divided the money into three amounts: (1) $1,000,000 was designated as the Management Retention Escrow amount, (2) $1,000,000

was designated as the Other Indemnification amount, and (3) $700,000 was designated as the Additional Purchase Consideration amount.

Release of the money in escrow to the sellers was tied to various contingencies. Under the Management Retention provisions, disbursement of the proceeds to the sellers was contingent on John Adams, president of Maritime, maintaining employment with the organization for two years. That contingency was subsequently fulfilled and taxpayers received their pro rata share of $392,157 in 1998. The Other Indemnified Losses amount was set aside to cover any unforeseen losses or expenses that might occur during the two years following the purchase. In 1998, taxpayers received $196,079 for their pro rata share from that amount. Release of the $700,000 designated as Additional Purchase Consideration was based on the savings in pension expenses and corporate taxes realized as part of the purchase. Taxpayers received $274,510 from that amount in 1998. As a result, taxpayers received additional income in the amount of $862,746 during 1998 from the sale of their stock in Maritime. Taxpayers received most of this money on February 11, 1998, with the remainder on June 28, 1998.[1]

On March 12, 1998, taxpayers invested $500,000 of the sale proceeds in Lysdale Enterprises, Inc. (LE), a sole-purpose S corporation. In return, they received 5,000 shares of stock. LE filed its Articles of Incorporation with the Oregon Secretary of State on February 5, 1998. It was created for the purpose of investing "in 'qualified business assets' and/or 'qualified business activities,' as those terms are defined by Oregon law, within the State of Oregon." Initially, LE invested the money in short-term certificates of deposit while it looked for a qualified business activity and/or asset in which it should invest. Eventually, on March 10, 1999, the corporation entered into a lease agreement under which it leased vehicles to a garbage collection business. There is no dispute this investment was an investment in a qualified

---

[1] Taxpayers received a final payment in January 2000 in the amount of $196,079.

business activity. LE made additional investments in qualified business activities on May 2, 2000, and August 30, 2000.

On their 1998 return, taxpayers reported the $862,746[2] received in 1998 from the sale of Maritime. With the return, taxpayers claimed a capital gain deferral in the amount of $624,711 as the result of their reinvesting $500,000 in LE. Upon review, the department adjusted taxpayers' return, finding they were not entitled to defer recognition of the income. The primary reason the department denied deferral was because it concluded that, pursuant to ORS 316.874(1), taxpayers needed to reinvest the money in a qualified business activity within six months of receipt of the income to qualify for deferral, which they failed to do. Alternatively, the department claimed the money received in 1998 was ordinary income and not a capital gain because the income represented something other than income from the sale of taxpayers' stock in Maritime. Taxpayers appeal the department's adjustment.

## ISSUES

1. Whether taxpayers' investment in LE constituted an investment in a qualified investment fund occurring within six months of when the gain would otherwise have been recognized?

2. Whether the income received in 1998 constitutes capital gain?

## ANALYSIS

*ISSUE NO. 1*

■ ORS 316.874[3] allows a taxpayer to defer recognition of capital gain when the taxpayer reinvests the money in a qualifying manner. The statute states, in pertinent part:

> "[A] taxpayer who has income for federal income tax purposes, from gain on the sale or other disposition of a capital asset may defer recognition of all or part of the gain in

---

[2] The return shows a figure of $862,745.10. The court will use $862,746 because that is the number referred to by the parties.

[3] All references to the Oregon Revised Statutes (ORS) are to 1997.

determining the taxes imposed under this chapter by reinvesting the proceeds of the sale or other disposition in a qualified business interest, qualified investment fund or qualified business asset within six months of the date on which the gain would otherwise have been recognized."

ORS 316.874(1).

Taxpayers received the subject proceeds in March 1998 and June 1998. They invested $500,000 of the proceeds in LE on March 12, 1998. Taxpayers maintain that LE meets the definition of a qualified investment fund under the provisions of ORS 316.873(9), which states:

"(9) 'Qualified investment fund' means a partnership, limited liability company or S corporation formed solely for the purpose of acquiring qualified business interests or qualified business assets and that:

"(a) Invests in qualified business interests or qualified business assets; or

"(b) Acquires investment property only on an interim basis or an incidental basis until a suitable qualified business interest or qualified business asset may be located by the fund."

There is no dispute LE is an "S corporation formed solely for the purpose of acquiring qualified business interests or qualified business assets." *Id.* The department denied deferral of recognition of the gain for the primary reason that the **fund** did not invest in a qualified business interest or asset within six months of when taxpayers received the income. The department maintains that, pursuant to ORS 316.874, the income must be invested in a qualified business interest/asset within six months to qualify for deferral. Taxpayers maintain that investing the proceeds in a qualified investment fund within six months qualifies them for deferral of recognition of the gain.

■ ■ When interpreting a statute, the objective of the court is to determine the intent of the legislature. To determine whether the legislature intended to grant taxpayers' deferral under those circumstances, the court must examine both the text and context of ORS 316.874. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

The text of the statute is the starting point in the analysis and is "the best evidence of the legislature's intent." *Id.* In evaluating the text, the court is guided by the principle that it should not "insert what has been omitted" or "omit what has been inserted." ORS 174.010.

■ ORS 316.874(1) requires a taxpayer to reinvest the proceeds of the sale in "a qualified business interest, qualified investment fund **or** qualified business asset within six months of the date on which the gain would otherwise have been recognized." (Emphasis added.) That statute by itself does not require a taxpayer to invest in a qualified business interest/asset within six months to qualify for deferral. Instead, it allows a taxpayer to choose among three investment vehicles: a qualified business interest, qualified investment fund, or qualified business asset. It is clear that reinvestment in one of those interests must occur within the six-month period. Taxpayers invested their proceeds in LE within the six-month period. The question becomes whether LE meets the statutory definition of a qualified investment fund.

As set forth above, the parties agree LE meets the first requirement in that it is an "S corporation formed solely for the purpose of acquiring qualified business interests or qualified business assets." ORS 316.873(9). The dispute focuses on the latter part of the definition, which requires that LE:

"(a) Invest[ ] in qualified business interests or qualified business assets; **or**

"(b) Acquire[ ] investment property only on an interim basis or an incidental basis until a suitable qualified business interest or qualified business asset may be located by the fund."

ORS 316.873(9) (emphasis added). The department argues the fund had to be actually investing in a qualified business interest or asset within six months of when taxpayers received the income or deferral is not allowed. The court disagrees.

■ Taxpayers reinvested the proceeds in LE within six months of receipt of the income believing LE was a qualified

investment fund. ORS 316.873(9) provides that a qualified investment fund may either be actually investing in a qualified business interest or asset **or** acquiring investment property on an interim or incidental basis while searching for a qualified business interest or asset in which to invest. When taxpayers invested their sale proceeds in LE, it was acquiring investment property while it looked for a qualified business interest/asset in which it could invest. The question remains whether acquisition of the investment property was only on an interim or incidental basis.

Clarence Lysdale (Lysdale) testified that during the time LE invested the money in the short-term certificates of deposit, it was actively looking for a qualified investment interest or asset. Lysdale testified LE was hoping to invest locally in the Florence area and was further hoping to make a sound investment. Given the economy, it took longer to locate a qualified investment opportunity than expected, but eventually, LE found what it concluded would be a solid investment in the Florence area. It then made the investment and subsequent investments followed.

■ Reviewing the facts, it is the court's conclusion that LE only acquired the certificates of deposit on an interim or incidental basis until it could locate a suitable qualified business interest/asset. The acquisition was interim given LE only invested in **short-term** certificates of deposit. Further, Lysdale testified how the fund was actively looking throughout that period for a qualified business interest/asset that would present a sound investment decision. Subsequent investments by LE only confirm the fund was genuinely set up for the purpose of investing in qualified business interests/assets.[4]

---

[4] That finding is supported by the legislative purpose behind ORS 316.874. Recognizing capital availability in Oregon is a problem, the legislature enacted this deferral provision with the intent it would encourage increased investment in Oregon businesses. *See* Testimony, SB 323 House State and School Finance Committee, Apr 28, 1995 (Steve Bender, Legislative Revenue Office). In this case, taxpayers' money has been invested by LE in Oregon businesses fulfilling the purpose of the statute. To interpret the words "interim" or "incidental" too narrowly would work contrary to the legislative purpose by discouraging investment in Oregon.

The court concludes, therefore, that taxpayers were only required within the six-month period to invest in a qualified investment fund. A qualified investment fund may either be actually investing in qualified business interests/assets or it may be acquiring investment property on an interim or incidental basis while searching for a qualified business interest/asset. Taxpayers invested their proceeds in LE within six months of receipt, and LE was only acquiring investment property until it could locate a suitable qualified business interest/asset in which it could invest. The court concludes taxpayers' investment meets the requirements for deferral under ORS 316.874.

*ISSUE NO. 2*

The department argues in the alternative that the income received in 1998 was for something other than the sale of taxpayers' stock and is not, therefore, a capital gain. The department claims that, because the income was tied to various contingencies, it could not be income from the sale of taxpayers' stock. Taxpayers argue that the income received represented part of the purchase price for their stock and that the proceeds had been set aside in escrow simply to serve as security for the parties. For example, they argue, if the corporation turned out to be other than as represented, MDI would have been able to withdraw the funds to compensate it. As it turned out, Maritime was exactly as it represented and followed through on its various promises; therefore, taxpayers received their full pro rata share of the designated $6,006,900 plus Additional Purchase Consideration purchase price.

The parties agree that if the income received in 1998 was part of the purchase price for the stock, it constitutes capital gain. The parties further agree that if the income represented something other than income from the sale of taxpayers' stock, the income is ordinary income and not subject to deferral under ORS 316.874.

■ After reviewing the evidence and considering the testimony, the court concludes the income received in 1998 represented part of the purchase price for the stock. The Agreement specifically provides that the purchase price for the

stock is $6,006,900 plus the Additional Purchase Consideration. It states:

"(a) As consideration for the Purchase, Buyer shall pay six million six thousand nine hundred dollars $6,006,900 plus the Additional Purchase Consideration as defined in Section 1.5, which makes up the aggregate purchase price ('Purchase Price'), subject to and in accordance with this agreement.

"(b) Buyer shall apply the Purchase Price proceeds, as follows:

"(i) At the Closing, Buyer shall deposit $2,700,000 (the 'Initial Escrow Amount') in the escrow account established by the Buyer and the Shareholders under the Escrow Agreement * * * to provide security for both parties. This Initial Escrow Amount shall be segregated into three parts; $1,000,000 for Management Retention in accordance with Section 1.4, $1,000,000 for Other Indemnified Losses as defined in Section 8.5, and $700,000 for payment of Additional Purchase Consideration in accordance with Section 1.5. Payments from the Initial Escrow Amount will be disbursed to the Shareholders on a pro rata basis according to their relative ownership of Company Stock * * *;

"(ii) The Buyer shall pay $4,006,900 in the aggregate (the 'Closing Seller Proceeds') to the Shareholders of the Company at the time of Closing."

Lysdale stayed with the company for some time after selling his stock to MDI. The department initially suggested the money received was tied to his services to the company. Taxpayers submitted, however, an Employment and Non-Competition Agreement between him and MDI under which Lysdale agreed to continue working for the company as a consultant. The Agreement provided him with a salary of $85,000 per year with a potential performance bonus.

It is clear to the court that the income of $862,746 received in 1998 was directly tied to the sale of taxpayers' stock to MDI. The court does not believe placing the money in escrow changed the character of the income. The shareholders had a contract to sell their stock and, assuming they delivered on their promises, they were entitled to receive the full purchase price. A portion of the proceeds was simply set

aside to provide security to the parties. Once the contingencies were fulfilled, the money was released to the shareholders as agreed. It is also clear to the court that the money was not tied to the consulting services provided by Lysdale because the income he received for his services was separately provided for by the parties. The court, therefore, concludes the income received in 1998 was capital gain.

## CONCLUSION

It is the conclusion of the court that taxpayers invested their money in a qualified investment fund within the requisite six-month period required by ORS 316.874. A qualified investment fund need not actually invest in a qualified business interest/asset within six months of when a taxpayer would otherwise have recognized a capital gain. However, if the fund is not actually investing in a qualified business interest/asset at that time, it must be actively looking for a qualified business interest/asset in which it might invest and, while doing so, it may acquire investment property on an interim or incidental basis until it locates an investment opportunity.

The court further concludes that the $862,746 received in 1998 represents proceeds from the sale of taxpayers' stock and is, therefore, a capital gain subject to deferral under ORS 316.874. Now, therefore;

IT IS THE DECISION OF THIS COURT that Defendant shall cancel the 1998 Notice of Tax Assessment dated November 1, 2000.